# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
CDM Constructors, Inc. ) ASBCA No. 59524
)
Under Contract No. N68711-04-D-5110 )

APPEARANCES FOR THE APPELLANT: J. Kent Holland, Jr., Esq.
William B. Fisher, Esq.
ConstructionRisk Counsel, PLLC
Vienna, VA

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Genifer M. Tarkowski, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
## ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF
## JURISDICTION AND ON BOARD ORDER REGARDING
## COUNT V OF THE COMPLAINT

## INTRODUCTION

The government moves to dismiss the appeal for lack of jurisdiction, arguing that the claim fails to state a sum certain and that the Board does not have jurisdiction to order the Navy to issue a termination for convenience. In response to a Board order the government also moved to dismiss Count V of the complaint.

## BACKGROUND

On 21 June 2010, the Department of the Navy (government) awarded to CDM Constructors, Inc. (CDM) Task Order No. 0025 pursuant to Contract No. N68711-04-D-5110, in the amount of $46,286,423, for the design and construction of a water treatment facility at Marine Corps Base Camp Pendleton, California (R4, tab 1 at 1-2; gov't mot. at 1; app. resp. at 1). On 6 June 2014, CDM presented to the contracting officer a request for a final decision (R4, tab 16). CDM requested that the task order be terminated for the convenience of the government because, CDM contended, the task order was impossible to perform (id. at GOV-112, 120-22). CDM also requested "a final decision that the direction to conduct vertical injection well testing constituted a change to the Contract, and that all funds paid to CDM on account of such testing were earned" (id. at GOV-124). CDM also quoted previous

correspondence it had sent to the government in which it had asserted, referring to an element of the facility to be constructed pursuant to the contract, that:

> [T]he results of the geotechnical investigations performed in December 2011 do not support the technical assumptions made for the sub-surface diffuser included in the Conformed Contract Documents because of differing site conditions.

(*Id.* at GOV-116) The claim letter also referenced "soil conditions" at the worksite, and recited a geotechnical report stating that:

> The combination of the available hydro-geologic data along with the size and location of the designated parcel suggest that the disposal of the proposed volume of water on the designated parcel is infeasible regardless of the method of discharge.
>
> ....
>
> In summary, the current project has insufficient size based upon the soil conditions and hydraulic conductivity.

(*Id.* at GOV-114-15) However, despite having divided the "Argument" section of the claim letter into three discretely labeled sub-sections (Impossibility/Impracticability of Performance, Defective Design Specification, and Breach of Implied Warranty of Specifications (*Spearin* Doctrine, and Change in Scope of Work)), CDM did not include in the claim letter any comparable section labeled "Differing Site Condition" (*id.* at GOV-120-22).

In the claim, CDM did not state the amount of the "funds paid" to which it referred. The claim contained however, the certification required by the Contract Disputes Act, 41 U.S.C. § 7103(b)(1), for contractor claims of more than $100,000, including that "the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable" (R4, tab 16 at GOV-125). The contracting officer has not issued a final decision. CDM appealed from the deemed denial of its request for a contracting officer's final decision.

On 30 October 2014, the government moved to dismiss the appeal for lack of jurisdiction, contending that the claim did not state a sum certain, and that the Board did not possess jurisdiction to order the Navy to terminate the task order for convenience. In its opposition to the motion, CDM contended that the Board possessed jurisdiction to entertain each of the counts of the complaint, and attached to

2

its opposition documents not presented to the contracting officer as part of its claim submission. Those attachments included several invoices (namely, invoice Nos. 27 through 30), as well as several "Cost/Earned Value Reports." Because the motions affect all aspects of the claim, we address each count of CDM's complaint, which generally tracks the relief sought in the submission to the contracting officer.

## DECISION

*Count I*

As does the claim presented to the contracting officer, Count I of the complaint alleges that performance of the task order is impossible, and seeks an order that the government terminate the task order for convenience. Although the Board does not possess jurisdiction to order injunctive relief such as the termination of a contract for convenience,[1] *see Lulus Ostrich Ranch*, ASBCA Nos. 59252, 59450, 14-1 BCA ¶ 35,769 at 175,001, the Board possesses jurisdiction to entertain non-monetary claims, *Eaton Contract Services, Inc.*, ASBCA No. 52888 *et al.*, 02-2 BCA ¶ 32,023 at 158,268, including whether performance of a contract is impossible. *See Lasmer Industries, Inc.*, ASBCA Nos. 56946, 56966, 11-1 BCA ¶ 34,671 at 170,801. Consequently, the Board possesses jurisdiction to entertain the impossibility claim set forth in Count I, but not the request for an order that the government terminate the contract for convenience.

*Count II*

Count II requests that the Board (1) declare that the government directed CDM to design, construct, test, and evaluate a vertical injection well, constituting a change

---

[1] As CDM points out, many Board cases involve the conversion of a contract default termination to one for the convenience of the government. *E.g.*, *Swanson Group, Inc.*, ASBCA No. 44664, 98-2 BCA ¶ 29,896 at 147,995. However, conversion in such cases is not the product of injunction, but, rather, the result, pursuant to contract default termination clauses, of findings that a default termination is improper. *See Kisco Co. v. United States*, 610 F.2d 742, 753 & n.5 (Ct. Cl. 1969); Federal Acquisition Regulation clause 52.249-8(g) (48 C.F.R. § 52.249-8(g)). As CDM concedes, the government has not terminated the contract, much less for default. CDM cites *Lasmer Industries, Inc.*, an appeal from the deemed denial of a request for a no-cost termination of an extant contract that the contractor contended was impossible to perform. 10-1 BCA ¶ 34,433 at 169,942-43. However, in *Lasmer*, the Board did not state that it possessed jurisdiction to order a no-cost termination of an extant contract; it indicated that the contractor was entitled to a hearing on its impossibility claim. *Id.* at 169,944.

3

to the task order, and (2) order that the government issue a contract modification for those services. Under the CDA, for the Board to possess jurisdiction to entertain a claim, the claim must first have been presented to the contracting officer. *See Lael Al Sahab & Co.*, ASBCA No. 58346, 13 BCA ¶ 35,394 at 173,662 (citing 41 U.S.C. § 7103). Although CDM requested that the direction to conduct vertical well testing was a contract change, it did not request that the contracting officer issue a contract modification for those services. In addition, although the Board possesses jurisdiction to interpret a contract to determine whether the government directed CDM to perform extra-contractual work, *see Donald M. Lake, d/b/a Shady Cove Resort & Marina*, ASBCA No. 54422, 05-1 BCA ¶ 32,920 at 163,071, the Board does not possess jurisdiction to order injunctive relief, such as the modification of a contract, *see Lulus Ostrich Ranch*, 14-1 BCA ¶ 35,769 at 175,001. Consequently, the Board possesses jurisdiction to entertain the request in Count II for a declaration that the government directed a change to the task order, but not the request for an order that the government modify the task order.

*Count III*

Count III requests that the Board declare that CDM's further performance is excused unless the government modifies the task order to increase funds for the task order. We find that request to be one for injunctive relief (that is, for an order suspending CDM's performance obligations until the government increases task order funding) that we do not possess jurisdiction to entertain. *See Lulus Ostrich Ranch*, 14-1 BCA ¶ 35,769 at 175,001. In addition, CDM did not make that request of the contracting officer. Consequently, the Board does not possess jurisdiction to entertain Count III.

*Count IV*

The Board does not possess jurisdiction to entertain Count IV. As did the claim to the contracting officer, Count IV requests that the Board determine that CDM has "duly earned" sums paid by the government to CDM. We interpret that as, essentially, a claim for monetary relief; that is, a claim that CDM is entitled to keep payments that it has received from the government. When the essence of a dispute is monetary in nature, the claim must be submitted to the contracting officer in a sum certain. *KM Records, Inc.*, ASBCA No. 46219, 94-2 BCA ¶ 26,749 at 133,074. In its response to the government's motion (app. opp'n at 4-5), CDM contends that the amount to which Count IV refers is $972,476 that was "expended, billed and paid" on account of "vertical injection well testing" that CDM contends is the "constructive change addressed in Count II" of the complaint.

However, that amount is not stated in CDM's request for a contracting officer's final decision (R4, tab 16). Although a contractor's submission contains a sum certain

4

where the amount demanded can be determined from a simple mathematical calculation, *Al Bahar Co.*, ASBCA No. 58416, 14-1 BCA ¶ 35,691 at 174,691, CDM's explanation of the amount demonstrates that arriving at the $972,476 figure is not a simple matter. CDM contends that the $972,476 was billed across Invoices Nos. 27 through 30: $200,000 for subsurface investigation in Invoice No. 27; $523,057 for subsurface investigation in Invoice No. 28; $149,651 for "feasibility report" in Invoice No. 29; and $99,768 for "feasibility report" in Invoice No. 30 (app. opp'n at 4-5). Although summing those four amounts is not difficult, identifying those addends is not at all simple. First, the invoices themselves, which are attached to CDM's response to the motion to dismiss but not to the request for a contracting officer's final decision, do not call out those amounts; one must search for them among dozens of other amounts contained in other documents that are also attached only to CDM's response to the government's motion (mostly "Cost/Earned Value Reports"). Second, none of those documents uses the term "vertical injection well testing"; therefore, to arrive at $972,476 for "vertical injection well testing" one must infer (or guess) that "vertical injection well testing" consists of "subsurface investigation" and "feasibility report," and nothing more.

Perhaps that is why CDM suggests that a sum certain may be "reasonably inferred." However, the sum-certain requirement is designed to provide the contracting officer an opportunity to settle the claim without litigation. *See Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,787. That requires more than the basis for only an inference. By failing either to specify, expressly, that $972,476 was the claim amount, or to provide the contracting officer with easily-understood information from which that amount could be arrived at through a simple calculation, CDM failed to state a sum certain.

In addition, Count IV seeks more than a declaration that the "vertical injection well testing" payments were earned; it "asks that the Board determine that [CDM] has duly earned *all sums* paid by the Government to [CDM] under the contract" (compl. at 12, ¶ 47 (emphasis added)). According to Invoice No. 30, the government has paid CDM over $43,000,000 pursuant to the task order; including for work other than the $972,476 in "vertical injection well testing" that CDM contends it earned (app. resp., attach. F). Because the request for a contracting officer's final decision references payments for only "vertical injection well testing," and because the Board does not possess jurisdiction to entertain monetary claims not first presented to the contracting officer, *Al Bahar*, 14-1 BCA ¶ 35,691 at 174,690, the Board in no case would possess jurisdiction to entertain Count IV's claim regarding payments for other work. Consequently, the Board does not possess jurisdiction to entertain Count IV.

5

*Count V*

Count V alleges a differing site condition claim. Again, the Board's jurisdiction to entertain a contractor's claim depends upon the contractor first submitting that claim to a contracting officer for a final decision. *See Lael Al Sahab* 13 BCA ¶ 35,394 at 173,662. Whether a claim before the Board is new or essentially the same as that presented to the contracting officer depends upon whether the claims derive from common or related operative facts. *Inchcape Shipping Services*, ASBCA No. 57152 *et al.*, 10-2 BCA ¶ 34,578 at 170,475. The assertion of a new legal theory of recovery, when based upon the same operative facts as the original claim, does not constitute a new claim. *Id.*

In order to establish the existence of a Type I differing site condition, a contractor must prove that it encountered a subsurface or latent physical condition at the site which differed materially from those indicated in the contract. *Dennis T. Hardy Electric, Inc.*, ASBCA No. 47770, 97-1 BCA ¶ 28,840 at 143,870. Proof of a Type II differing site condition requires that the evidence establish the existence of an unknown physical condition at the site, of an unusual nature, which differs materially from that ordinarily encountered and generally recognized in inhering in work of the character provided for in the contract. *Id.* at 143,870-71. CDM's request for a contracting officer's final decision does not articulate a differing site condition claim, nor does it identify the operative facts of such a claim. The claim letter does not identify a condition encountered at the site and a condition indicated in the contract that CDM now contends materially differed from each other, as required for a Type I differing site condition. Nor does the claim letter identify anything that was unknown and unusual about the site that differs materially from that ordinarily encountered and generally recognized in inhering in work of the character provided for in the contract that CDM might now contend is an "Type II" differing site condition.

It is true that the term "differing site conditions" appears in CDM's claim letter: the claim letter at page 5 quotes from what CDM indicated is an 8 June 2012 letter in which it stated that "the results of the geotechnical investigations performed in December 2011 do not support the technical assumptions made for the sub-surface diffuser included in the Conformed Contract Documents because of differing site conditions" (R4, tab 16 at GOV-116). However, it is telling that the claim letter does not affirmatively set forth any claim labeled "differing site condition." Indeed, the claim letter refers to "soil conditions" at the site, but does not identify any contradictory description in the contract of what the soils conditions should have been. Nor does the claim letter set forth any facts regarding whether the soil conditions at the site were unusual. Rather, the letter sets forth facts (some of them embedded in quotations from other correspondence) regarding whether the site's soil conditions, given the size of the site, were capable of diffusing water at the rate required by the contract.

6

None of the facts in the claim letter indicates any difference between conditions at the site and any other conditions; they bear upon whether those conditions make the contract-specified site unsuitably small. Because CDM did not present to the contracting officer the operative facts that it could now rely upon to assert a differing site condition claim, the Board does not possess jurisdiction to entertain the differing site condition claim alleged in Count V, regardless of whether that claim is classified as a Type I or a Type II differing site condition.

## CONCLUSION

For the foregoing reasons, the Board dismisses for lack of jurisdiction (1) the request in Count I for an order that the government terminate the contract for convenience, (2) the request in Count II for an order that the government modify the contract, (3) Count III, (4) Count IV, and (5) Count V. Otherwise, the motion to dismiss is denied; leaving CDM's claims of impossibility of performance (Count I), and constructive change (Count II) in the appeal, neither of which is a monetary claim.

Dated: 27 August 2015

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59524, Appeal of CDM Constructors, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8